UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROB ROY MCGREGOR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 11-CV-0570-CVE-TLW |
| ) | |
| **NATIONAL STEAK PROCESSORS, INC.,** ) | |
| d/b/a National Steak & Poultry, ) | |
| and **STEVEN A. KORMONDY,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court are Defendant National Steak Processors, Inc's Partial Motion to Dismiss Complaint and Alternative Request for a More Definite Statement as to Plaintiff's Fraud Claim and Brief in Support (Dkt. # 17) and Defendant Steven A. Kormondy's Partial Motion to Dismiss Complaint and Brief in Support (Dkt. # 19). Defendants each move to dismiss plaintiff's second claim for relief based on fraud and plaintiff's third claim for relief based on breach of the duty of good faith and fair dealing.

I.

Defendant National Steak Processors, Inc., d/b/a National Steak & Poultry, (NSP) is a private company that markets marinated food products to restaurant chains. In 1979, plaintiff Rob Roy McGregor (McGregor) and defendant Steven A. Kormondy (Kormondy) incorporated NSP and entered into a shareholder agreement, which stated that McGregor and Kormondy each owned 50% of the outstanding shares of stock of NSP. The complaint alleges that McGregor and Kormondy worked closely together and had a mentor-mentee relationship. In 1993, McGregor moved out of state, but retained his 50% ownership of NSP stock and retained his position on the board of

directors. However, plaintiff alleges that, once he moved, he "would often defer to Kormondy's business decisions and judgment" because of the "trust and confidence [plaintiff] had in the integrity and loyalty of Kormondy." Dkt. # 2 at 3.

In 2006, Kormondy offered to buy plaintiff's shares of NSP stock. The parties negotiated the terms of the buy-out for approximately one month, and a stock purchase agreement (SPA) was executed on October 10, 2006. Under the terms of the SPA, McGregor sold his NSP shares to plaintiff for $8.6 million, in the form of an unsecured subordinated promissory note in the principal amount of $7.6 million, and a one-time $1 million distribution of retained earnings. Upon closing, McGregor assigned and transferred his NSP stock certificates to Kormondy. On December 31, 2006, McGregor and Kormondy executed the subordinated promissory note (the note), which provided that NSP would pay McGregor $84,375.58 per month for 83 months with a final balloon payment of $2,857,886.87 due on December 31, 2013. NSP also agreed to pay interest at a rate of 6% per annum, and interest on past due amounts at a rate of 11% per annum. The note further stated that:

> the indebtedness evidenced by this Note including the principal thereof and interest thereon, shall be subordinate in right of payment to all bank debt owed by [NSP] ("Bank Debt"). As such, no direct or indirect payment on account of the principal or interest on this Note shall be made by [NSP] at any time when any event of default on any Bank Debt shall have occurred and shall not have been remedied.

Dkt. # 2-4 at 2. The note was signed by plaintiff and Kormondy, in his capacity as president of NSP.[1]

---

[1] The SPA also provided that NSP would execute a promissory note for the repayment of a loan that plaintiff had made to NSP (the loan note). The loan note was also executed on December 31, 2006. The loan note has been paid in full and is not a subject of this lawsuit. See Dkt. # 2 at 6; Dkt. # 26 at 2, n.1.

2

Up until July 2009, plaintiff received monthly payments in accordance with the note. Around that time, Kormondy told plaintiff that NSP was in default under its credit facility loan agreement with the Bank of Oklahoma, N.A. Kormondy stated that NSP needed to suspend payments on the note for the remainder of 2009, as required by the terms of the note. Based on this representation, plaintiff agreed to modify the terms of the note. The parties memorialized their amendment in a document entitled "Summary of Loan Payments," which provided that: (i) payments would be suspended for 2009; (ii) monthly payments would resume in January 2010 at a rate of $106,005 per month; (iii) these monthly payments would be applied to the loan note until it was paid off, at which time the payments would be applied to the note; (iv) NSP would pay default interest of $14,932 a month for 12 months; and (v) the final balloon payment on the note due on December 31, 2013 would increase to $3,121,158.[2]

Plaintiff received payments in accordance with the Summary of Loan Payments until July 2010. In March 2010, Kormondy represented to plaintiff that NSP was in financial trouble and would likely be in default with Bank of Oklahoma by the end of 2010. In reliance on this representation, plaintiff agreed to a second modification of the note. The second modification was memorialized in a document entitled "Summary of 2010 Revised Loan Payments" and was signed by plaintiff and Kormondy, in his capacity as president of NSP, on March 8, 2010. The Summary of 2010 Revised Loan Payments provided that: (i) monthly payments of $106,005 would continue through June 2010 and be applied only to the loan note; (ii) monthly default interest payments of $14,392 would continue through December 31, 2010; (iii) payments for July through December

---

[2] The Court notes that the copy of the "Summary of Loan Payments" attached to the complaint is neither signed nor dated. See Dkt. # 2-6 at 2. However, defendants have not disputed the validity of this document, nor contested its terms, in their motions.

3

2010 would be reduced to $50,000 per month; (iv) monthly payments of $106,005 would resume in January 2011; and (v) the final balloon payment due on December 31, 2013 would increase to $3,528,337.75.

Plaintiff received monthly payments in accordance with this modification until December 2010. In August 2010, Kormondy informed plaintiff that NSP would not be able to resume payments of $106,005 in January 2011, as required by the modification. When plaintiff inquired as to the reason for NSP's inability to pay, Kormondy allegedly responded that he "may not pay McGregor a 'God damn penny.'" Dkt. # 2 at 7.

Plaintiff alleges that he learned in November 2010 that:

> Kormondy has been abusing NSP's funds and assets to line his own pockets . . . [by taking] excessive distributions for himself, in the form of salary increases, dividends, prepayments of interest on personal loans made to NSP, and exorbitant fringe benefits (*i.e.* automobile allowance of $32,000 per year to pay for his Ferrari and using the company credit card to pay for personal vacations).

Id. Plaintiff did not receive any payments from NSP in 2011. Plaintiff alleges that, as of August 31, 2011, the balance due on the note was at least $6,602,601.34.

The complaint alleges four claims for relief: (i) breach of contract against NSP; (ii) deceit/concealment against both defendants; (iii) breach of the duty of good faith and fair dealing against both defendants; and (iv) interference with contract against Kormondy. Each defendant filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), for dismissal of the second and third claims. Defendants argue that plaintiff has failed to adequately plead these claims and that these claims are barred by Oklahoma law.

## II.

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly stated the pleadings standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB–TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs, 263 F.3d 1151, 1154-55 (10th Cir.2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.3d 1106, 1109-10 (10th Cir. 1991).

**III.**

**A. Deceit/Concealment**

Defendants argue that plaintiff's claim for deceit and/or concealment must be dismissed because it fails to plead the elements of a fraud claim under Oklahoma law and is not pled with particularity, as required by Fed. R. Civ. P. 9(b). The complaint alleges that defendants "concealed or failed to disclose a material fact which they had a duty to disclose to McGregor. Upon information and belief, NSP and Kormondy have no intention of paying MacGregor the full amount he is owed under the written contract terms. Defendants had a duty to disclose this fact to McGregor." Dkt. # 2 at 9-10. Plaintiff argues that it has stated a valid claim for fraudulent concealment under Oklahoma law. Dkt. # 26 at 5.

Under the general common law rule, "a claim for fraud must be distinct from a claim for breach of contract." Edwards v. Farmers Ins. Co., No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009). Oklahoma law is in accord with this general principle. See id.; see also Multimedia Games, Inc. v. Network Gaming Int'l Corp., No. 98-CV-67-H(M), 1999 WL 33914442, at *7 (N.D. Okla. 1999) ("[M]ere allegations of fraud in an action based solely in contract are insufficient to state a cause of action based on fraud."). Where a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the "tortious act [is] sufficiently independent of the breach of contract." Id.; see also KT Specialty Distribution, LLC v. Xlibris Corp., No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008) ("the wrong giving rise to a tort claim must be independent of the breach of contract"). Thus, where "the facts alleged in [a plaintiff's] tort claim are precisely the same as those alleged in [his] contract claim," a separate tort claim will not be allowed. Isler v. Tex. Oil & Gas Corp., 749 F.2d 22, 24

(10th Cir. 1984). In addition, a plaintiff must incur actual damages for commission of the tort rather than damages merely for the breach of contract. Edwards, 2009 WL 4506218, at *5 (citing Zenith Drilling Corp. v. Internorth, Inc., 869 F.2d 560, 565 (10th Cir. 1989).

Plaintiff's breach of contract claim alleges that NSP has materially breached the SPA by "repudiating the performance of its contractual obligation to pay McGregor" and because it "does not intend to pay McGregor what he is owed under the contract." Dkt. # 2 at 9. Plaintiff's fraud claim is based on the allegation that defendants did not disclose that they had no intention of paying plaintiff. Plaintiff's fraud claim and his contract claim are based on precisely the same conduct, namely, defendants' alleged intention to breach the contract. Plaintiff has not articulated a tort claim independent of his breach of contract claim. Plaintiff cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract. If this Court were to hold otherwise, any breach of contract action could be simultaneously brought as a tort action. Further, plaintiff does not set forth any damages he incurred specifically as a result of the alleged fraud. Even in the paragraph of the complaint seeking punitive damages for fraud, plaintiff does not allege that he suffered any emotional distress or pain and suffering specifically as result of the fraud. See Dkt. # 2 at 11. Because the facts alleged in plaintiff's fraud claim are precisely the same as those alleged in plaintiff's contract claim, and because plaintiff has not alleged any damages arising specifically from the fraud, plaintiff cannot state a separate cause of action for fraud. See Isler, 749 F.2d at 24 (dismissing tort claim where facts alleged were same as facts alleged in contract claim); Fox v. Overton, 534 P.2d 679, 681 (Okla. 1975) (holding that a petition did not state a cause of action for fraud when it merely alleged that a defendant "fraudulently" refused to

7

complete a sale because the "sum of the allegations" amounted to no more than "a cause in contract").

Plaintiff cites two Oklahoma statutes that, it argues, "recognize[] statutory causes of action" for fraud arising out of a contractual relationship. Dkt. # 26 at 5-6 (citing OKLA. STAT. tit. 15, §§ 58, 59). However, these statutes merely <u>define</u> fraud in the context of a contract. There is no evidence that the Oklahoma legislature intended these statutes to give rise to independent causes of action in tort where there is a contemporaneous contract claim. None of the cases plaintiff cites holds otherwise; in fact, the cases cited by plaintiff involve plaintiffs seeking to rescind a contract, to declare a contract invalid, or not involving a breach of contract claim. <u>See</u>, <u>e.g.</u>, <u>Hubbard v. Bryson</u>, 474 P.2d 407 (Okla. 1970) (affirming order cancelling contract based on fraud). None of the cases cited by plaintiff that allowed fraud claims also allowed simultaneous breach of contract claims based on the same set of facts.

**B. Breach of Duty of Good Faith and Fair Dealing**

Plaintiff alleges that defendants breached the duty of good faith and fair dealing that is implied in every contract under Oklahoma law.[3] Defendant argues that Oklahoma law does not allow a separate tort claim for breach of the duty of good faith and fair dealing where the contract is not an insurance contract, the parties do not have a special relationship, and/or there was no gross recklessness or wanton negligence.

---

[3]   In his response to defendant Kormondy's motion, plaintiff states that his claim for breach of the implied duty of good faith and fair dealing against Kormondy is not based in contract, but is based on the fiduciary relationship between the plaintiff and Kormondy. Dkt. # 26 at 12. However, plaintiff did not allege a separate claim for breach of fiduciary duty against Kormondy. The complaint explicitly states that the breach of implied duty claim against Kormondy is based on Kormondy's position as agent of a contracting party. Dkt. # 2 at 11.

8

Under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing." Wathor v. Mutual Assurance Adm'rs, Inc., 87 P.3d 559, 561 (Okla. 2004). In cases involving "ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability." Id. "In the proper case, however, punitive . . . damages may be sought." Morrison v. Anadarko Petroleum Corp., No. CIV-10-135-M, 2010 WL 2721397, at *3 (W.D. Okla. July 6, 2010) (internal quotations omitted). The "proper case" requires that a "special relationship" exist between the parties. See Wathor, 87 P.3d at 561-62. Oklahoma courts have found such a "special relationship" in only very limited circumstances, most notably between an insurer and insured. Id. at 561; see also Lewis v. Aetna U.S. Healthcare, Inc., 78 F. Supp. 2d 1202, 1208 (N.D. Okla. 1999) (noting that while some intermediate Oklahoma courts have considered extending the tort of breach of implied duty of good faith and fair dealing beyond the insurance context, "the Oklahoma Supreme Court has steadfastly limited [such a tort claim] to insurance contracts, even when presented with the opportunity to expand the tort to other contexts."). The "special relationship" in insurance contracts stems from the "quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable." Wathor, 87 P.3d at 561-62; see also Lewis, 78 F. Supp. 2d at 1208 (noting the special relationship in insurance contracts exists because "the purchaser of insurance does not contract to obtain a commercial advantage but to protect himself/herself against the risks of accidental losses and the mental stress which could result from such losses.") (internal quotations omitted).

Plaintiff argues that he has stated a claim for breach of implied duty of good faith and fair dealing because a special relationship existed between the parties. Plaintiff asserts that a special

9

relationship arose between Kormondy and plaintiff because plaintiff assumed a "lesser role in NSP's daily operations" and "would often defer to Kormondy's business decisions and judgment." Dkt. # 2 at 3. Plaintiff argues that this allowed Kormondy to exert power at a time when plaintiff was particularly vulnerable. Thus, plaintiff argues that the facts in this case are akin to the relationship between an insurer and an insured, and a duty of good faith and fair dealing should be found to exist.

Plaintiff's argument is unavailing. The complaint fails to allege any facts that would support the existence of a special relationship in this commercial context. First, the sale of stock in a privately held company does not raise the quasi-public implications that are present in insurance contracts. Second, there is no allegation of unequal bargaining power between the parties. To the contrary, the complaint alleges that the parties met to discuss and negotiate the terms of the SPA and that plaintiff rejected the first written proposal. Dkt. # 2 at 3. Third, plaintiff was not "particularly vulnerable" in this situation in the way that an insured would be after a loss of property. Finally, plaintiff did not undertake the transaction to protect himself from risk of loss, but instead to obtain the commercial advantage of payment for his shares of stock. The fact that plaintiff was less involved in the company and that he relied on Kormondy for certain information does not give rise to the unequal bargaining power associated with insurance contracts. The mere fact that the parties once trusted each other is not sufficient to create a special relationship under Oklahoma law. Because no special relationship exists, plaintiff cannot state a claim for breach of the implied duty of good faith and fair dealing. See Combs v. Shelther Mut. Ins. Co., 551 F.3d 991, 999 (10th Cir. 2008) (affirming dismissal of tort claim because "commercial agency contract . . . lacks the quasi-public nature and unequal bargaining positions present in insurance contracts"); Pre-Paid Legal Servs., Inc. v. Kane, No. CIV-07-388-FHS, 2008 WL 640351, at *4 (E.D. Okla. March 5, 2008)

10

(dismissing counterclaim for breach of implied duty of good faith and fair dealing because "pleading fails to reveal any facts which would support the existence of a special relationship . . . in this admittedly commercial context"); Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1226 (Okla. 1988) (affirming dismissal of tort claim where there was "arms'-length negotiating, a relatively equal bargaining capacity and no snares or traps for the unwary").

Lastly, plaintiff argues that, even if no special relationship exists, he has stated a claim for breach of the implied duty of good faith and fair dealing because defendants acted with gross recklessness and wanton negligence. In Rodgers, the Oklahoma Supreme Court recognized the possibility that "[g]ross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract." Rodgers, 756 P.2d at 1227. However, the Oklahoma Supreme Court has more recently suggested that gross recklessness or wanton negligence would not be sufficient absent a special relationship. See Beshara v. S. Nat'l Bank, 928 P.2d 280, 288 (Okla. 1996) (affirming dismissal of breach of good faith and fair dealing claim because plaintiff "neither avers nor points to any facts in the record which would support his theory that a special relationship existed" even though plaintiff alleged that defendant's actions were "intentional, malicious, and in reckless and wanton disregard"). The Court need not determine whether gross recklessness or wanton negligence alone could support a claim for breach of the implied duty of good faith and fair dealing because the Court finds that plaintiff has failed to plead facts sufficient to rise to the level of gross recklessness or wanton negligence. Taking all well-pleaded allegations of the complaint as true, and construing the allegations in the light most favorable to the claimant, the Court finds that plaintiff has failed to allege that defendants were grossly reckless or wantonly negligent in informing plaintiff that NSP was in default or in danger

11

of default.  Plaintiff does not allege that Kormondy was untruthful when he informed plaintiff that NSP was in default or in danger of default.  Plaintiff alleges only that Kormondy did not reveal the underlying reason that NSP was, or was about to be, in default.  Because there is no contractual duty in the SPA to inform plaintiff of the reason for default, any alleged omission about the reason for default was not a material misrepresentation.  Thus, it is impossible to conclude that defendants could have acted recklessly or negligently in failing to divulge information that they were under no duty to divulge.  <u>BancFirst v. Dixie Restaurants, Inc.</u>, No. CIV-11-174-L, 2012 WL 12879, at *3 (W.D. Okla. Jan. 4, 2012) ("There can be no negligence if the defendant does not owe a duty to the plaintiff . . . .").

**IT IS THEREFORE ORDERED** that Defendant National Steak Processors, Inc's Partial Motion to Dismiss Complaint and Alternative Request for a More Definite Statement as to Plaintiff's Fraud Claim and Brief in Support (Dkt. # 17) is **granted** as to the motion to dismiss and **moot** as to a more definite statement, and Defendant Steven A. Kormondy's Partial Motion to Dismiss Complaint and Brief in Support (Dkt. # 19) is **granted**.  The second and third claims for relief are dismissed against both defendants for failure to state a claim.

**DATED** this 1st day of February, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT