# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROB ROY MCGREGOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0570-CVE-TLW |
| | ) |
| NATIONAL STEAK PROCESSORS, INC., | ) |
| d/b/a National Steak & Poultry, | ) |
| and STEVEN A. KORMONDY, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Plaintiff's Opposed Motion for Leave to File Amended Complaint and Brief in Support (Dkt. # 88). Plaintiff subsequently filed a supplement under seal that includes unredacted exhibits. Dkt. # 91. Defendant Kormandy and defendant National Steak Processors, Inc., d/b/a National Steak & Poultry, (NSP) each filed a response in opposition to the motion. Dkt. ## 107, 108. Plaintiff then filed a reply (Dkt. # 114), to which defendant NSP requested permission to file a sur-reply. Based on newly raised issues in the reply, the Court allowed NSP to file a sur-reply (Dkt. # 125).

Plaintiff states in his motion that he does not seek to add any new claims to the complaint, but merely wishes to incorporate additional facts obtained during discovery. Defendants argue that the motion is untimely and that plaintiff seeks to add a theory of recovery that would not survive a motion to dismiss.

**I.**

Defendant NSP is a private company that markets marinated food products to restaurant chains. In 1979, plaintiff Rob Roy McGregor and defendant Steven A. Kormondy incorporated NSP and entered into a shareholder agreement, which stated that McGregor and Kormondy each owned 50% of the outstanding shares of stock of NSP.

In 2006, Kormondy offered to buy plaintiff's shares of NSP stock. The parties negotiated the terms of the buy-out for approximately one month, and a stock purchase agreement (SPA) was executed on October 10, 2006. Under the terms of the SPA, McGregor sold his NSP shares to Kormondy for $8.6 million, in the form of an unsecured subordinated promissory note in the principal amount of $7.6 million, and a one-time $1 million distribution of retained earnings. Upon closing, McGregor assigned and transferred his NSP stock certificates to Kormondy. On December 31, 2006, McGregor and Kormondy executed the subordinated promissory note (the note), which provided that NSP would pay McGregor $84,375.58 per month for 83 months with a final balloon payment of $2,857,886.87 due on December 31, 2013. NSP also agreed to pay interest at a rate of 6% per annum, and interest on past due amounts at a rate of 11% per annum. The note further stated that:

> the indebtedness evidenced by this Note including the principal thereof and interest thereon, shall be subordinate in right of payment to all bank debt owed by [NSP] ("Bank Debt"). As such, no direct or indirect payment on account of the principal or interest on this Note shall be made by [NSP] at any time when any event of default on any Bank Debt shall have occurred and shall not have been remedied.

2

Dkt. # 108-9 at 2. The note was signed by McGregor and Kormondy, in his capacity as president of NSP.[1]

Until July 2009, McGregor received monthly payments in accordance with the note. At about that time, Kormondy told plaintiff that NSP was in default under its credit facility loan agreement with Bank of Oklahoma, N.A. Kormondy stated that NSP needed to suspend payments on the note for the remainder of 2009, as required by the terms of the note. Based on this representation, plaintiff agreed to modify the terms of the note. The parties memorialized their amendment in a document entitled "Summary of Loan Payments," which provided that: (i) payments would be suspended for 2009; (ii) monthly payments would resume in January 2010 at a rate of $106,005 per month; (iii) these monthly payments would be applied to the loan note until it was paid off, at which time the payments would be applied to the note; (iv) NSP would pay default interest of $14,932 per month for 12 months; and (v) the final balloon payment on the note due on December 31, 2013 would increase to $3,121,158.

Plaintiff received payments in accordance with the Summary of Loan Payments until July 2010. In March 2010, Kormondy represented to plaintiff that NSP was in financial trouble and would likely be in default with Bank of Oklahoma by the end of 2010. In reliance on this representation, plaintiff agreed to a second modification of the note. The second modification was memorialized in a document entitled "Summary of 2010 Revised Loan Payments" and was signed by plaintiff and Kormondy, in his capacity as president of NSP, on March 8, 2010. The Summary

---

[1] The SPA also provided that NSP would execute a promissory note for the repayment of a loan that plaintiff had made to NSP (the loan note). The loan note was also executed on December 31, 2006. The loan note has been paid in full and is not a subject of this lawsuit. See Dkt. # 91 at 2 n.1.

3

of 2010 Revised Loan Payments provided that: (i) monthly payments of $106,005 would continue through June 2010 and be applied only to the loan note; (ii) monthly default interest payments of $14,392 would continue through December 31, 2010; (iii) payments for July through December 2010 would be reduced to $50,000 per month; (iv) monthly payments of $106,005 would resume in January 2011; and (v) the final balloon payment due on December 31, 2013 would increase to $3,528,337.75.

Plaintiff received monthly payments in accordance with this modification until December 2010. In August 2010, Kormondy informed plaintiff that NSP would not be able to resume payments of $106,005 in January 2011, as required by the modification. When plaintiff inquired as to the reason for NSP's inability to pay, Kormondy allegedly responded that he "may not pay McGregor a 'God damn penny.'" Dkt. # 2 at 7.

Plaintiff alleges that he learned in November 2010 that:

> Kormondy has been abusing NSP's funds and assets to line his own pockets . . . [by taking] excessive distributions for himself, in the form of salary increases, dividends, prepayments of interest on personal loans made to NSP, and exorbitant fringe benefits (*i.e.* automobile allowance of $32,000 per year to pay for his Ferrari and using the company credit card to pay for personal vacations).

Id. Plaintiff did not receive any payments from NSP in 2011. Plaintiff alleges that, as of August 31, 2011, the balance due on the note was at least $6,602,601.34.

The complaint initially alleged four claims for relief: (i) breach of contract against NSP; (ii) deceit/concealment against both defendants; (iii) breach of the duty of good faith and fair dealing against both defendants; and (iv) interference with contract against Kormondy. The second and third claims for relief were dismissed for failure to state a claim. Dkt. # 55.

4

Plaintiff now seeks to make a number of amendments to the complaint, including deletion of dismissed claims and insertion of numerous grammatical and style alterations. Plaintiff also seeks to add facts related to NSP's alleged default under the credit facility loan agreement with Bank of Oklahoma. Specifically, plaintiff seeks to add allegations that "Karmondy would intentionally overpay his estimated taxes by exorbitant amounts" in order to "pocket large sums" in tax refunds. Dkt. # 91-1 at 25. Plaintiff alleges that these actions were "a direct breach of the clear negative covenants of NSP's Loan Agreement with [Bank of Oklahoma,]" which "contained strict negative covenants which defined the amounts and methods a stockholder could be paid distributions and dividends by NSP." Id. at 20, 25. Thus, the proposed amended complaint alleges, "[b]ecause NSP breached its covenant obligations to the Bank of Oklahoma, it rendered itself in breach of the agreement with McGregor." Id. at 28.

## II.

Rule 15(a) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004). "In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance, futility of amendment, etc. the leave

5

sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).[2] Leave to amend is a matter committed to the court's discretion, but the district court must give a reason for a refusal. Fed. Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987).

Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jefferson Cnty Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). When considering plaintiff's motion, the Court must accept the facts stated in the proposed amended complaint as true and determine whether the proposed claims would survive dismissal under Fed. R. Civ. 12(b)(6). See Jefferson Cnty Sch. Dist., 175 F.3d at 859. In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S.

---

[2] Rule 16(b)(4) states that a "schedule may be modified only for good cause . . . ." The scheduling order in this case set a deadline of December 16, 2011 for amendments to the pleadings. Dkt. # 28. Some circuits have held that a party seeking to amend the pleadings after the deadline set for such amendments in the scheduling order must satisfy the "good cause" requirement of Rule 16. See, e.g., Hawthorne Land Co. v. Occidental Chem. Corp., 431 F.3d 221, 227 (5th Cir. 2005); Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437-38 (8th Cir. 1999); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay. See Hawthorne, 431 F.3d at 228; Leary, 349 F.3d at 907; Parker, 204 F.3d at 340-41; In re Milk Prods., 195 F.3d at 437-38; Johnson, 975 F.2d at 609-10. The Tenth Circuit adopted a similar interpretation of Rule 16(b)'s "good cause" requirement in the context of counterclaims asserted after the scheduling order deadline, SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518-19 (10th Cir. 1990), but has not done so in the context of an amendment to the complaint. The Court need not address whether Rule 16(b)(4)'s "good cause" standard applies in this case because plaintiff is unable to satisfy the more lenient standard of Rule 15(a)(2).

544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly stated the pleadings standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**III.**

All of the substantive additions to the proposed amended complaint concern the allegation that NSP's "violation of the bank covenant, as we have here with the refunds and the compensation Kormondy took in excess of historical compensation, is also a breach of McGregor's promissory note." Dkt. # 91 at 11. Defendants argue that any amendment in support of this allegation would be futile because, even assuming that NSP were in violation of the covenants in the Bank of Oklahoma loan agreement, such violation would not be, as a matter of law, a breach of the SPA and incorporated promissory note.

To state a claim for breach of contract, a plaintiff must allege that the parties had a valid contract, a breach of the contract occurred, and the plaintiff suffered damages resulting from the breach.[3] Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 843 (Okla.2001).

---

[3] Plaintiff's counsel states that "there are no Oklahoma cases listing the elements of a claim for breach of contract." Dkt. # 114 at 3 n.4. Not only are there Oklahoma Supreme Court cases on this issue, see, e.g., Digital Design Group, Inc., 24 P.3d at 843, but also this Court has repeatedly stated the elements for a breach of contract claim under Oklahoma law. See, e.g., Rierson v. Okla. Farm Bureau Mut. Ins. Co., No. 11-CV-0285-CVE-PJC, 2011 WL 2559425, at *2 (N.D. Okla. June 28, 2011); Qassas v. Daylight Donut Flour Co., No. 09-CV-0663-CVE-PJC, 2010 WL 2365472, at *8 (N.D. Okla. June 10, 2010); AG Equip. Co. v. AIG Life Ins. Co., No. 07-CV-0556-CVE-PJC, 2008 WL 4570319, at *3 (N.D. Okla. Oct. 10, 2008).

If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). The interpretation of an unambiguous contract is a question of law for the courts. Ferrell Const. Co., Inc. v. Russell Creek Coal Co., 645 P.2d 1005, 1007 (Okla. 1982).

The subordination provision of the note provides that "no direct or indirect payment on account of the principal or interest on this Note shall be made by [NSP] at any time when any event of default on any Bank Debt shall have occurred and shall not have been remedied." Dkt. # 108-9 at 2. The plain language of this provision manifests the parties' intent that, if there is a default on any bank debt, payments on the note will be suspended. Plaintiff argues that because of this provision, "the bank loan is 'necessary to carry' the subordination provision 'into effect' and is 'implied therefrom.'" Dkt. # 91 at 11. In effect, plaintiff is arguing that the Court should construe the language of the promissory note to include the implied provision that NSP will be in breach of the SPA and incorporated note if it defaults on any bank loan.

In support of this argument, plaintiff relies on Okla. Stat. tit. 15, § 172, which states that "[a]ll things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." Okla. Stat. tit. 15, § 172. Oklahoma courts have interpreted this statute to mean that a contract "consists not only of its express language, but also of the obligations that are reasonably implied." Brown v. Patel, 157 P.3d 117, 122 n.8 (Okla. 2007). However, "[a]s a general rule implied covenants are not favored in the law." Mercury Investment Co. v. F.W. Woolworth Co., 706 P.2d 523, 530 (Okla. 1985). "When the

8

bargained-for agreement is reduced to writing, a court may not make a new contract for the parties or rewrite the existing contract." Id.

Plaintiff's position that compliance with all bank loan covenants is an implied provision of the agreement between the parties is simply not supported by the unambiguous plain language of the contract. The language of the note states that if NSP defaults on a bank debt, then NSP would suspend payments on the note. Thus, NSP's potential non-compliance with an agreement with a third-party creditor was not only contemplated by the parties, but also was specifically addressed in the language of the note. The note does not state that a default on a bank debt or breach of a covenant with a bank would render NSP in breach of the terms of the note. The Court will not re-write the existing contract. There is simply no reasonable interpretation of the plain language of the note that manifests an intent that breach of a third-party loan agreement is breach of the agreement between NSP and plaintiff.

Further, a bank loan is not "necessary" to effectuate the subordination provision. The fact that parties contract for the effect of a potential occurrence on a contract does not make that potential occurrence necessary to the contract. Thus, the fact that the parties agreed that a breach of any bank loan agreement would result in a suspension of payment on the note does not necessitate that a breach of the bank loan agreement is automatically a breach of the note. In fact, such an interpretation would render the subordination provision meaningless because it would be nonsensical for the parties to agree that a breach of the bank loan agreement was a breach of the terms of the note, but to simultaneously provide that such a breach allowed NSP to suspend payments on the note.

9

Plaintiff's allegations that a breach of the bank loan agreement constituted a breach of the terms of the note do not state a claim upon which relief could be granted. Because the allegations that plaintiff seeks to add to the complaint would not support a claim that could survive a motion to dismiss, the amendment is futile.

**IT IS THEREFORE ORDERED** that Plaintiff's Opposed Motion for Leave to File Amended Complaint and Brief in Support (Dkt. # 88) is **denied**.

**DATED** this 16th day of July, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE