# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROB ROY MCGREGOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-0570-CVE-TLW |
| | ) | |
| NATIONAL STEAK PROCESSORS, INC., | ) | |
| d/b/a National Steak & Poultry, | ) | |
| and STEVEN A. KORMONDY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is National Steak Processors, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt.# 97). National Steak Processors, Inc. (NSP) moves for summary judgment on plaintiff's claim of breach of contract.

## I.

Defendant NSP is a private company that markets marinated food products to restaurant chains. In 1979, plaintiff Rob Roy McGregor and defendant Steven A. Kormondy incorporated NSP and entered into a shareholder agreement, which stated that McGregor and Kormondy each owned 50% of the outstanding shares of stock of NSP.

In 2006, Kormondy offered to buy plaintiff's shares of NSP stock. The parties negotiated the terms of the buy-out for approximately one month, and a stock purchase agreement (SPA) was executed on October 10, 2006. Under the terms of the SPA, McGregor sold his NSP shares to Kormondy for $8.6 million, in the form of an unsecured subordinated promissory note in the principal amount of $7.6 million, and a one-time $1 million distribution of retained earnings. Upon closing, McGregor assigned and transferred his NSP stock certificates to Kormondy. On December 31, 2006, McGregor and Kormondy executed the subordinated promissory note (the note), which

provided that NSP would pay McGregor $84,375.58 per month for 83 months with a final balloon payment of $2,857,886.87 due on December 31, 2013. NSP also agreed to pay interest at a rate of 6% per annum, and interest on past due amounts at a rate of 11% per annum. The note further stated that:

> the indebtedness evidenced by this Note including the principal thereof and interest thereon, shall be subordinate in right of payment to all bank debt owed by [NSP] ("Bank Debt"). As such, no direct or indirect payment on account of the principal or interest on this Note shall be made by [NSP] at any time when any event of default on any Bank Debt shall have occurred and shall not have been remedied.

Dkt. # 97-1 at 38. The note was signed by McGregor and Kormondy, in his capacity as president of NSP.[1]

Until July 2009, McGregor received monthly payments in accordance with the note. At about that time, Kormondy told plaintiff that NSP was in default under its credit facility loan agreement with Bank of Oklahoma, N.A. Plaintiff concedes that NSP was in default on the Bank of Oklahoma loan in the third quarter of 2009. Dkt. # 127 at 10. Kormondy stated that NSP needed to suspend payments on the note for the remainder of 2009, as required by the terms of the note. Based on this representation, plaintiff agreed to modify the terms of the note. The parties memorialized their amendment in a document entitled "Summary of Loan Payments," which provided that: (i) payments would be suspended for 2009; (ii) monthly payments would resume in January 2010 at a rate of $106,005 per month; (iii) these monthly payments would be applied to the loan note until it was paid off, at which time the payments would be applied to the note; (iv) NSP

---

[1] The SPA also provided that NSP would execute a promissory note for the repayment of a loan that plaintiff had made to NSP (the loan note). The loan note was also executed on December 31, 2006. The loan note has been paid in full and is not a subject of this lawsuit. See Dkt. # 91 at 2 n.1.

2

would pay default interest of $14,932 per month for 12 months; and (v) the final balloon payment on the note due on December 31, 2013 would increase to $3,121,158. Dkt. # 97-2 at 24.

Plaintiff received payments in accordance with the Summary of Loan Payments until July 2010. In March 2010, Kormondy represented to plaintiff that NSP was in financial trouble and would likely be in default with Bank of Oklahoma by the end of 2010. Neither party presents evidence that NSP was actually in danger of defaulting on the Bank of Oklahoma loan in 2010. However, plaintiff concedes that he "was willing to further modify" the payment terms of the note. Dkt. # 127 at 19. In reliance on Kormondy's representation, plaintiff agreed to a second modification of the note. The second modification was memorialized in a document entitled "Summary of 2010 Revised Loan Payments" and was signed by plaintiff and Kormondy, in his capacity as president of NSP, on March 8, 2010. The Summary of 2010 Revised Loan Payments provided that: (i) monthly payments of $106,005 would continue through June 2010 and be applied only to the loan note; (ii) monthly default interest payments of $14,392 would continue through December 31, 2010; (iii) payments for July through December 2010 would be reduced to $50,000 per month; (iv) monthly payments of $106,005 would resume in January 2011; and (v) the final balloon payment due on December 31, 2013 would increase to $3,528,337.75. Dkt. # 97-2 at 34.

Plaintiff received monthly payments in accordance with this modification until December 2010. In August 2010, Kormondy informed plaintiff that NSP would not be able to resume payments of $106,005 in January 2011, as required by the modification. When plaintiff inquired as to the reason for NSP's inability to pay, Kormondy allegedly responded that he "may not pay [plaintiff] a 'God damn penny.'" Dkt. # 127 at 11. NSP does not dispute that, in August 2010, Kormondy told plaintiff that he "may" not resume payments in 2011. Dkt. # 97 at 12.

It is undisputed that NSP has made no payments on the note since January 2011. It is further undisputed that this non-payment is due "in part, to the fact that [NSP] has been and remains in default with [Bank of Oklahoma] for failure to [comply with] its loan agreements." Dkt. # 97 at 8; Dkt. # 127 at 6 (admitting NSP's statement of material fact, paragraph 24). It is further undisputed that, in addition to being in default on the Bank of Oklahoma loan, NSP is also in default on other bank debt, which also warrants a suspension of payments under the subordination provision of the note. Id. Plaintiff alleges that, as of August 31, 2011, the balance due on the note was at least $6,602,601.34. Dkt. # 2 at 8.

The complaint initially alleged four claims for relief: (i) breach of contract against NSP; (ii) deceit/concealment against both defendants; (iii) breach of the duty of good faith and fair dealing against both defendants; and (iv) interference with contract against Kormondy. The second and third claims for relief were dismissed for failure to state a claim. Dkt. # 55.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

4

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

NSP has moved for summary judgment on plaintiff's breach of contract claim. NSP argues that it has not anticipatorily breached the SPA and the loan note. Plaintiff responds that NSP has anticipatorily breached the SPA and the loan note and that, even if it has not, NSP is still liable for a past breach of the note.

Before addressing the merits of the parties' arguments, it is necessary to clarify the precise contractual relationship between plaintiff and NSP. There are four written agreements relevant to this matter that have been entered into by the plaintiff and NSP: the SPA, the note, and the two note modifications. Throughout the pleadings, the parties have been inexact in discussing precisely which contractual obligation NSP is alleged to have breached. It appears that the parties have conflated the four agreements into one general contractual obligation, which plaintiff argues NSP

has breached and/or anticipatorily breached. This is incorrect as a matter of law. The plain language of the SPA required that, at closing, NSP was to: (i) deliver a promissory note for the repayment of a loan (the loan note); (ii) deliver $1,000,000 in retained earnings; and (iii) deliver a subordinated promissory note in the principal amount of $7,600,000 (the note). Dkt. # 97-1 at 3. In return, the SPA required that plaintiff would deliver certain stock certificates and an assignment of interest. Id. It is undisputed that, upon closing, NSP delivered the cash payment and the two promissory notes. Dkt. # 97 at 3; Dkt. # 127 at 6; Dkt. # 2 at 4. It is further undisputed that, upon closing, plaintiff delivered the stock certificates and the assignment of interest. Dkt. # 97 at 3; Dkt. # 127 at 6. Thus, the mutual obligations under the SPA have been fulfilled. There are no outstanding obligations of either party under the SPA. This means that the SPA has not been breached, nor can it be anticipatorily breached, as all obligations have been performed.

The only remaining written obligations between the parties that are relevant to this matter are the note and the two modifications thereof. Plaintiff argues that NSP has anticipatorily breached the note because Kormondy stated his intent not to make payments on it in the future. NSP argues that there can be no anticipatory repudiation because plaintiff has performed fully under the terms of the note and because Kormondy never stated an unequivocal intent not to comply with the note. Plaintiff cannot prevail on his anticipatory breach theory, but not for the reason cited by defendants. Plaintiff cannot prevail because the theory of anticipatory breach is not applicable to a unilateral contract for the payment of money, such as a promissory note.

The doctrine of anticipatory repudiation applies only to a "bilateral, executory contract." OK Sales, Inc. v. Canadian Tool & Die, Ltd., No. 08-CV-24-TCK-TLW, 2009 WL 961791, at *9 (N.D. Okla. Mar. 31, 2009); see also Smyth v. United States, 302 U.S. 329, 356 (1937) ("the rule of law

is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money only"); Bourke v. W. Bus. Prods., Inc., 120 P.3d 876, 883 (Okla. Civ. App. 2005) ("The doctrine of anticipatory repudiation may not apply to a unilateral contract."). "[A] unilateral contract is one in which there is a promise on one side only, the consideration on the other side being executed." Edwards v. Petross, 381 P.2d 1008, 1010 (Okla. 1963); see also Bourke, 120 P.3d at 882 ("[a] contract is unilateral when one party who makes a promise has received a consideration other than a promise to make the contract binding") (internal quotations omitted). A promissory note is a promise to pay money in the future, the consideration for which is typically the lending of funds, which has already been performed at the time the note is executed. See Price v. Mize, 628 P.2d 705, 706 (Okla. 1981) ("A promissory note is an unconditional written promise . . . in which the maker agrees to pay a fixed sum of money on demand or at a definite time."). Thus, a promissory note is a unilateral contract and the doctrine of anticipatory repudiation does not apply.[2] For this reason, summary judgment on plaintiff's anticipatory breach claim must be granted in favor of NSP.[3]

---

[2] Even if the promissory note and modifications were somehow construed to be bilateral contracts, plaintiff's claim of anticipatory breach would fail. In order to prevail on an anticipatory breach claim, a plaintiff must prove that the defendant made "a distinct, unequivocal, and absolute declaration of an intent not to perform." OK Sales, Inc., 2009 WL 961791, at *9. It is unlikely that a reasonable fact-finder could find, based on the facts presented, that a representative of NSP made such an absolute declaration. Regardless, anticipatory breach will not apply where plaintiff has fully performed under the contract. Id. ("there is an exception to this rule if there has been 'full performance' by the party asserting anticipatory repudiation and the only remaining performance by the other party is the payment of money"). Here, plaintiff has fully performed under the note and modifications, and he does not assert that there is any obligation he has yet to perform.

[3] The Court notes that payment on the promissory note is due in full on December 31, 2013. Dkt. # 97-1 at 38. Of course, if full payment is not made by that date, plaintiff may sue for breach at that time.

Plaintiff asserts that, in addition to his anticipatory breach claim, he has a surviving claim for NSP's past breach of the promissory note and modifications. Specifically, plaintiff argues that NSP's "breach of the [Bank of Oklahoma] contract constitutes a breach of the SPA." Dkt. # 127 at 33. As noted above, NSP fully performed under the SPA by delivering the note, loan note, and the $1,000,000 payment to plaintiff at closing. To the extent that plaintiff is attempting to argue that NSP's default on the Bank of Oklahoma loan constitutes a breach of the note and modifications, this argument has already been addressed by this Court. In its opinion and order denying plaintiff's motion to amend, this Court held that "[p]laintiff's position that compliance with all bank loan covenants is an implied provision of the agreement between the parties is simply not supported by the unambiguous plain language of the contract." Dkt. # 148 at 9. Thus, to the extent that plaintiff's complaint can be read to encompass a claim for past breach of the note and modifications, the Court relies on its earlier holding that such a claim fails as a matter of law.

For these reasons, summary judgment must be granted to NSP on plaintiff's breach of contract claim.

**IT IS THEREFORE ORDERED** that National Steak Processors, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt.# 97) is **granted**. National Steak Processors, Inc. is terminated as a party to this action.

**IT IS FURTHER ORDERED** that Defendant National Steak Processors, Inc.'s Motion to Exclude Testimony of Plaintiff's Expert and Brief in Support (Dkt. # 119) and Defendant National Steak Processors, Inc's Motion in Limine to Exclude and Strike the Errata Sheets of Rob Roy McGregor, David Albright, and Charles Rogers and Brief in Support (Dkt. # 120) are **deemed moot**.

**DATED** this 20th day of July, 2012.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE