## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROB ROY MCGREGOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-0570-CVE-TLW |
| | ) | |
| STEVEN A. KORMONDY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant Steven A. Kormondy's Motion for Summary Judgment

and Brief in Support (Dkt. # 102). Defendant Kormondy moves for summary judgment on

plaintiff's claim for tortious interference with a contract.

## I.

National Steak Processors, Inc. (NSP) is a private company that markets marinated food

products to restaurant chains. In 1979, plaintiff Rob Roy McGregor and defendant Steven A.

Kormondy incorporated NSP and entered into a shareholder agreement, which stated that McGregor

and Kormondy each owned 50% of the outstanding shares of stock of NSP.

In 2006, Kormondy offered to buy plaintiff's shares of NSP stock. The parties negotiated

the terms of the buy-out for approximately one month, and a stock purchase agreement (SPA) was

executed on October 10, 2006. Under the terms of the SPA, McGregor sold his NSP shares to

Kormondy for $8.6 million, in the form of an unsecured subordinated promissory note in the

principal amount of $7.6 million, and a one-time $1 million distribution of retained earnings. Upon

closing, McGregor assigned and transferred his NSP stock certificates to Kormondy. On December

31, 2006, McGregor and Kormondy executed the subordinated promissory note (the note), which

provided that NSP would pay McGregor $84,375.58 per month for 83 months with a final balloon

payment of $2,857,886.87 due on December 31, 2013. NSP also agreed to pay interest at a rate of

6% per annum, and interest on past due amounts at a rate of 11% per annum. The note further stated

that:

> the indebtedness evidenced by this Note including the principal
> thereof and interest thereon, shall be subordinate in right of payment
> to all bank debt owed by [NSP] ("Bank Debt"). As such, no direct or
> indirect payment on account of the principal or interest on this Note
> shall be made by [NSP] at any time when any event of default on any
> Bank Debt shall have occurred and shall not have been remedied.

Dkt. # 102-5 at 2. The note was signed by McGregor and Kormondy, in his capacity as president

of NSP.[1]

Until July 2009, McGregor received monthly payments in accordance with the note. At

about that time, Kormondy told plaintiff that NSP was in default under its credit facility loan

agreement with Bank of Oklahoma, N.A. Plaintiff concedes that NSP was in default on the Bank

of Oklahoma loan in the third quarter of 2009. Dkt. # 127 at 10. Kormondy stated that NSP needed

to suspend payments on the note for the remainder of 2009, as required by the terms of the note.

Based on this representation, plaintiff agreed to modify the terms of the note. The parties

memorialized their amendment in a document entitled "Summary of Loan Payments," which

provided that: (i) payments would be suspended for 2009; (ii) monthly payments would resume in

January 2010 at a rate of $106,005 per month; (iii) these monthly payments would be applied to the

loan note until it was paid off, at which time the payments would be applied to the note; (iv) NSP

---

[1]    The SPA also provided that NSP would execute a promissory note for the repayment of a
       loan that plaintiff had made to NSP (the loan note). The loan note was also executed on
       December 31, 2006. The loan note has been paid in full and is not a subject of this lawsuit.
       See Dkt. # 91 at 2 n.1.

would pay default interest of $14,932 per month for 12 months; and (v) the final balloon payment on the note due on December 31, 2013 would increase to $3,121,158. Dkt. #106 at 118.

Plaintiff received payments in accordance with the Summary of Loan Payments until July 2010. In March 2010, Kormondy represented to plaintiff that NSP was in financial trouble and would likely be in default with Bank of Oklahoma by the end of 2010. In reliance on Kormondy's representation, plaintiff agreed to a second modification of the note. The second modification was memorialized in a document entitled "Summary of 2010 Revised Loan Payments" and was signed by plaintiff and Kormondy, in his capacity as president of NSP, on March 8, 2010. The Summary of 2010 Revised Loan Payments provided that: (i) monthly payments of $106,005 would continue through June 2010 and be applied only to the loan note; (ii) monthly default interest payments of $14,392 would continue through December 31, 2010; (iii) payments for July through December 2010 would be reduced to $50,000 per month; (iv) monthly payments of $106,005 would resume in January 2011; and (v) the final balloon payment due on December 31, 2013 would increase to $3,528,337.75. Dkt. # 102-11 at 2.

Plaintiff received monthly payments in accordance with this modification until December 2010. In August 2010, Kormondy informed plaintiff that NSP would not be able to resume payments of $106,005 in January 2011, as required by the modification. It is undisputed that NSP has made no payments on the note since January 2011. It is further undisputed that this non-payment is due to NSP being in covenant default with the Bank of Oklahoma. Dkt. # 102 at 14; Dkt. # 126 at 10. Plaintiff alleges that, as of August 31, 2011, the balance due on the note was at least $6,602,601.34. Dkt. # 2 at 8.

3

Plaintiff alleges that Kormondy repeatedly took improper disbursements from NSP, which depleted NSP's resources and caused it to be in default on the Bank of Oklahoma loan. Plaintiff further alleges that the disbursements Kormondy took from NSP were themselves a violation of the covenants in the Bank of Oklahoma loan, which limitied the type and amount of distributions that could be made to shareholders. Kormondy argues that, as president and sole shareholder of NSP, he was entitled to determine his compensation and other disbursements, and that such disbursements were not improper. Kormondy further states that he had no intention of interfering with plaintiff's rights to payment under the note.

The complaint initially alleged four claims for relief: (i) breach of contract against NSP; (ii) deceit/concealment against both defendants; (iii) breach of the duty of good faith and fair dealing against both defendants; and (iv) interference with contract against Kormondy. The second and third claims for relief were dismissed for failure to state a claim. Dkt. # 55. Summary Judgment was granted to NSP on the breach of contract claim. Dkt. # 154.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff argues that Kormondy's disbursements from NSP caused NSP's default on the Bank of Oklahoma loan, which resulted in the suspension of payments to plaintiff pursuant to the subordination provision of the note. Plaintiff contends that, because the disbursements caused the suspension of payments on the note, Kormondy's actions constitute a tortious interference with his contract with NSP.

Oklahoma has adopted the Restatement (Second) of Torts as it pertains to claims for tortious interference. Wilspec Techs., Inc. v. Dunan Holding Grp. Co., 204 P.3d 69, 70-71 (Okla. 2009). The Restatement recognizes three species of intentional interference claim: "(1) section 766

5

interference with a third party's performance with an existing contract; (2) section 766A interference with plaintiff's own performance; or (3) section 766B interference with prospective contractual relations not yet reduced to contract." Id. at 71. In Wilspec Techs., Inc., the United States District Court for the Western District of Oklahoma certified a question to the Oklahoma Supreme Court - whether Oklahoma adopts § 766A of the Restatement regarding interference with plaintiff's own performance of a contract. Id. at 70. In answering this question in the affirmative, the court discussed the tort of intentional inference with contract under Oklahoma law. The Wilspec Techs., Inc. court stated that "Oklahoma has embraced . . . the intentional tortious interference claim[] found at section[] 766 . . . ." Restatement § 766 states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766; see also Wilspec Techs., Inc., 204 P.3d at 71-72. The court then held that Oklahoma also recognizes a § 766A claim of tortious interference. Restatement § 766A states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts § 766A; see also Wilspec Techs., Inc., 204 P.3d at 72.

> As noted by the Wilspec Techs., Inc. court:

> The core distinction between the torts described in section 766 and section 766A is to whom the defendant's conduct is targeted. Section 766 focuses on conduct directed at a third party which induces the third party to breach his contract with the plaintiff. Section 766A on the other hand, is concerned with conduct targeted at the

6

plaintiff which hinders plaintiff's own performance or renders plaintiff's performance more burdensome or costly. Additionally unlike section 766, section 766A does not require a breach or nonperformance for liability to attach.

Wilspec Techs., Inc., 204 P.3d at 72-73. Thus, the Oklahoma Supreme Court unequivocally stated that, where a plaintiff alleges that defendant has intentionally interfered with a contract pursuant to § 766, a breach or nonperformance of the third party is required for liability to attach. Id.

Plaintiff has not stated under which section of the Restatement his claim arises. However, plaintiff does repeatedly cite to § 766 in his opposition to the summary judgment motions. See Dkt. # 126 at 27 n.6; 36 n.10. Nonetheless, it is clear from the facts that plaintiff's claim must arise under § 766. Plaintiff alleges that Kormondy interfered with plaintiff's contract with a third party (NSP) by causing the third party not to make payments on the note.[2]  Because plaintiff alleges that defendant interfered with the conduct of the third party, Oklahoma law requires plaintiff to show that the contract has been breached in order for defendant to be liable. Wilspec Techs., Inc., 204 P.3d at 72-73. As discussed in this Court's opinion and order granting summary judgment to NSP, there has been no breach of the terms of the note because the note allows payment to be suspended when there is an event of default on the Bank of Oklahoma loan. Because there has been no breach of the contract with NSP, plaintiff cannot maintain a claim for tortious interference with the contract.[3]

---

[2]    Plaintiff's claim cannot arise under § 766A because there has been no allegation that Kormondy has acted to hinder plaintiff's own performance or make plaintiff's performance more costly. Such an allegation would be untenable because, as discussed in this Court's order granting summary judgment to NSP, the promissory note between NSP and plaintiff is a unilateral contract requiring no further performance on the part of plaintiff. Dkt. # 154 at 7.

[3]    As noted in this Court's prior order, the promissory note is due in full on December 31, 2013. If full payment has not been made by that date, plaintiff may sue for breach and tortious interference at that time.

Plaintiff argues that Oklahoma law does not require plaintiff to show that a breach occurred in order for defendant to be liable for tortious interference. In support of this argument, plaintiff relies on <u>Allison v. American Airlines, Inc.</u>, 112 F. Supp. 37 (N.D. Okla. 1953), which stated that "[f]or 'inducing' a breach of contract or for 'interfering' with a business relationship [defendant] can be held for all damages which flow from such interference, irrespective of whether a breach of contract is established." <u>Id.</u> at 39. While this language does suggest that a tortious interference claim can be maintained even when a breach of the contract has not occurred, this language is merely dicta, as the issue in <u>Allison</u> was whether a tortious interference claim was a separate cause of action for jurisdictional purposes. <u>Id.</u> This Court finds that the more recent declaration of the Oklahoma Supreme Court that a tortious interference claim under § 766 requires a breach of the contract is both controlling and more persuasive than an almost sixty-year-old case from the Northern District of Oklahoma.

**IT IS THEREFORE ORDERED** that Defendant Steven A. Kormondy's Motion for Summary Judgment and Brief in Support (Dkt. # 102) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine and Brief in Support (Dkt.# 117) and Defendant Steven A. Kormondy's Motion in Limine and Brief in Support (Dkt. # 118) are **deemed moot**.

**DATED** this 24th day of July, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

8